**Theresa M. VLAHOS, Plaintiff–Appellant,**

v.

**Chief Nursing Officer Lee XIPPOLITOS, Defendant–Appellee,**

---

State University of New York at Stony Brook School of Medicine, Chief Executive Officer Bruce Schroeffel, Associate Director Ronnie Schultz, Dean of Medical School George Tyson, Defendants.

No. 06–5411–cv.

United States Court of Appeals, Second Circuit.

April 7, 2008.

Paul L. Dashefsky, Smithtown, NY, for Appellant.

Sasha Samberg–Champion, Assistant Solicitor General, (Andrew M. Cuomo, Attorney General of the State of New York; Michelle Aronowitz, Deputy Solicitor General, on the brief), for Appellee.

PRESENT: Hon. JOSEPH M. McLAUGHLIN and Hon. PETER W. HALL, Circuit Judges, and Hon. LEONARD B. SAND, District Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Theresa M. Vlahos appeals from a judgment, after a bench trial, in favor of Defendant–Appellee Lee Xippolitos and dismissing Vlahos's complaint alleging that Xippolitos violated the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, ("FMLA" or "Act") when Xippolitos failed to assign Vlahos to a position equivalent to the position in which Vlahos was working prior to taking FMLA leave. We assume the parties familiarity with the underlying facts, the procedural history, and the issues on appeal.

The FMLA provides that certain eligible employees are "entitled to a total of 12 workweeks of leave during any 12–month period" for any one of several reasons enumerated in the Act. *See* 29 U.S.C. § 2612(a)(1). The Act also requires that, when an eligible employee returns from FMLA leave, that employee is "entitled ... (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)–(B).

The parties do not dispute that, at some point prior to her FMLA leave, Vlahos was employed as a senior nurse practitioner and associate director of nursing in Stony Brook University Hospital's ("Hospital") Center for Complementary and Alternative Medicine ("CAM"). The parties also agree that in April 2001 Vlahos took FMLA leave and returned to the Hospital in October 2001, and that, when she returned, Vlahos was first assigned to perform research for Xippolitos, and was then later assigned to a different nurse practitioner position in another Hospital Department. Vlahos, however, contends that the district court incorrectly determined that at the time Vlahos commenced her FMLA leave, she was no longer working in her position in CAM, but, rather, had been working for Hospital Associate Director of Nursing Ronni Schultz in the Women's and Children's Services Division. According to Vlahos, the district court improperly compared the position with Schultz to the position with Xippolitos to conclude that, upon her return from FMLA leave, Vlahos was restored an equivalent position for the purposes of the Act. Xippolitos argues that the district court properly compared the two positions.

* The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

"Following a bench trial, [this Court] review[s] the district court's conclusions of law *de novo* and its factual findings for clear error." *Reynolds v. Giuliani*, 506 F.3d 183, 189 (2d Cir.2007). Mixed questions of law and fact are subject to *de novo* review. *See Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir.2004).

In this case, the parties disagree on which standard of review applies to the district court's determinations. Vlahos argues that, because all of the district court's determinations involved the interpretation of the FMLA, each of those conclusions is subject to *de novo* review. Xippolitos argues that, because each of the district court's conclusions was based on a determination of fact, those conclusions are subject to review for clear error. This Court has not addressed the standards of review applied to a district court's determinations under the FMLA. Other courts that have addressed this issue have generally determined that, where a district court is required to apply the standards or requirements of the Act to a particular set of facts, the determination at issue involves a mixed question of law and fact. *See Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1254–55 (11th Cir.2004) (noting that whether the defendant was the plaintiff's employer for purposes of the FMLA "is a mixed question of fact and law (involving the application of the law to particular facts)"); *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir.2000) (determining that whether a condition is a "serious health condition" for purposes of FMLA eligibility is "one of those ubiquitous mixed questions of fact and law" because the regulations implementing the Act "set out an objective test for a FMLA 'serious health condition'" and "it is for the fact-finder to look at the record and decide if the evidence supports the elements of that test").

In the context of court rules and other statutory schemes, this Court has described a mixed question of law and fact as one where "[a] legal standard ... is being applied to a set of facts, some of which may be in dispute." *In re Initial Pub. Offering Sec. Litit.*, 471 F.3d 24, 40 (2d Cir.2006) (discussing the issue in the context of class certification under Fed. R.Civ.P. 23); *see also Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir.2005) ("Whether the district court correctly applied the IDEA's statutory and regulatory provisions to the facts of a particular case is mixed question of law and fact."); *Overton v. Newton*, 295 F.3d 270, 276–77 (2d Cir.2002) (determining, for purposes of review under the AEDPA, that the determination of whether a defendant demonstrated a prima facie case of discriminatory use of peremptory juror challenges was a mixed question of law and fact because "once the fact-finding has been performed, the judge must then determine, as a matter of law, whether these underlying facts suffice to establish a prima facie case") (internal quotation marks and citation omitted).

█ In this case, the district court's determination that at the time of her leave Vlahos was working for Schultz in the Women's and Children's Services division was one of fact. Neither the FMLA nor the regulations implementing the Act provide any standard or "test" upon which a fact-finder is required to rely in determining what position an individual held at the time that he or she commenced FMLA leave. To make this determination, the district court considered only the facts as presented in the testimony and evidence elicited during the bench hearing. Accordingly, the district court's factual determination that Vlahos was working for Schultz in Women's and Children's Services immediately prior to her FMLA leave is subject

to review for clear error. *See Reynolds,* 506 F.3d at 189.

■ However, the district court's determination that the position to which Vlahos was assigned immediately after the termination of her leave was equivalent to the "temporary" position in Women's and Children's Services would necessarily involve the application of the standards set forth in the regulations implementing the Act—specifically 29 C.F.R. § 825.215(a)—to the facts of the case. Accordingly, that determination is of a mixed question of law and fact, and is subject to *de novo* review. *See Rose,* 391 F.3d at 67.

■ Here, nothing in the record suggests that the district court's factual determination that Vlahos was not working in the CAM center, but, rather, had been assigned to the Women's and Children's Services under the supervision of Schultz at the time of her FMLA leave was clearly erroneous. Substantial testimony supported the district court's conclusion that, by the time Vlahos commenced her FMLA leave, the CAM center had closed and its employees had been reassigned or transferred to other positions in the Hospital. The Hospital administrators who testified at the bench trial consistently stated not only that the CAM center had been permanently dismantled at the time of Vlahos's leave, but also that two administrators had spent some time attempting to find a position for Vlahos in the wake of that closure. While some testimony corroborated Vlahos's testimony that there were issues with the "billing mechanism" used by the CAM center, that testimony also expressly contradicted Vlahos's assertion that this problem was the reason Vlahos had stopped seeing patients. That Vlahos was no longer working for CAM at the time of her FMLA leave is further evidenced by the change in status form prepared at the time of her transfer, reflecting, as the administrators testified, that Vlahos had been transferred to the Women's and Children's Services division prior to taking that leave. Vlahos offered no evidence other than her own testimony demonstrating either that the CAM center was still in existence at the time of her FMLA leave or that she was somehow still working in her CAM capacity at the time she started her leave.

■ The district court also correctly concluded that, when she returned to work, Vlahos's position with Xippolitos was equivalent to her position with Schultz. It is not contested that in both positions Vlahos maintained her salary and benefits levels, as well as her title of associate director of nursing. Neither position involved contact with patients, and the record reflects that each was essentially a research position. Further, as the district court pointed out, each of the positions was a stop gap measure apparently intended by the Hospital administrators to maintain Vlahos's employment there until they could place her in a position more suited to her training and education. It is certainly true that both positions were arguably "below" Vlahos's training and education as a nurse practitioner. However, maintaining an individual's employment in a position best suited to her education is not the purpose of the FMLA. *See* 29 U.S.C. § 2601(b)(2) ("It is the purpose of this Act . . . to entitle employees to take reasonable leave for medical reasons."). Accordingly, there is no basis upon which to disturb the district court's conclusion on this point.

We have considered all of Vlahos's other claims claims and find them to be without merit. Accordingly, for the foregoing reasons, we **AFFIRM** the judgment of the District Court.